WISCONSIN CENTRAL LTD., Petitioner-Appellant,

v.

PUBLIC SERVICE COMMISSION OF WISCONSIN, Wisconsin Southern Gas Company, Inc., Northern States Power Company, Wisconsin Gas Company, Wisconsin Electric Power Company and Wisconsin Natural Gas Company, Wisconsin Power & Light Company, Municipal Electric Utilities of Wisconsin, and City of Plymouth, Wisconsin Public Service Corporation, Respondents-Respondents.

Court of Appeals

*No. 91-0637. Submitted on briefs December 10, 1991.—Decided August 13, 1992.*

(Also reported in 490 N.W.2d 27.)

559

560

For the petitioner-appellant the cause was submitted on the briefs of *James A. Fletcher* and *Michael D. Dabertin* of *Oppenheimer, Wolff & Donnelly* of Chicago.

561

For the Public Service Commission of Wisconsin the cause was submitted on the brief of *Steven Levine* of *Public Service Commission of Wisconsin* of Madison.

For Wisconsin Southern Gas Company, Inc., the cause was submitted on the brief of *Hugh H. Bell* and *William C. Williams* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison.

For Northern States Power Company the cause was submitted on the brief of *Joseph R. Mirr* of *Garvey, Anderson, Johnson, Gabler & Geraci, S.C.* of Eau Claire.

For Wisconsin Gas Company the cause was submitted on the brief of *Gregory A. Wheeler* and *Charles J. Cummings* of Milwaukee.

For Wisconsin Electric Power Company and Wisconsin Natural Gas Company the cause was submitted on the brief of *Walter T. Woelfle* of Milwaukee.

For Wisconsin Power & Light Company the cause was submitted on the brief of *Barbara J. Swan* of *Wisconsin Power & Light Company* of Madison.

For Municipal Electric Utilities of Wisconsin and the City of Plymouth the cause was submitted on the brief of *Michael P. May* and *Anita T. Gallucci* of *Boardman, Suhr, Curry & Field* of Madison.

For Wisconsin Public Service Corporation the cause was submitted on the brief of *Allen W. Williams, Jr., Michael D. Flanagan* and *Joseph E. Dannecker* of *Foley & Lardner* of Milwaukee.

For the Soo Line Railroad Company an amicus curiae brief was submitted by *Patrick J. Nugent* of *Soo Line Railroad Company* of Minneapolis.

For Green Bay & Western Railroad Company an amicus curiae brief was submitted by *Gerald M. O'Brien* of *Anderson, Shannon, O'Brien, Rice & Bertz* of Stevens Point.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J. Wisconsin Central Ltd. ("WCL") appeals from a judgment affirming an order of the Public Service Commission of Wisconsin ("the commission"). Pursuant to sec. 196.04(4), Stats.,[1] the order specifies the terms by which Wisconsin Southern Gas Company ("WSG") is allowed to cross WCL's tracks with its gas transmission pipelines. WCL raises the following issues on appeal: (1) whether the commission abused its discretion by prescribing its own terms and conditions without first finding those contained in WCL's license agreement to be unreasonable and inequitable; (2) whether the commission acted outside the scope of its authority by not allowing WCL to recover "indirect" costs of administering the license agreements; (3) whether the commission misinterpreted the statute by basing compensation for the crossing right on the diminution in value of WCL's property; (4) whether the commission's determination that the diminution in value due to the pipeline installations at private crossings was nominal was supported by substantial evidence; and (5) whether the commission erred as a matter of law in concluding that installation of WSG's facilities at a public crossing did not impose an additional burden on WCL's property.

---

[1]Section 196.04(4), Stats., provides:

If the parties cannot agree and the commission finds that public convenience and necessity or the rendition of reasonably adequate service to the public requires that a public utility be permitted to extend its lines on, over or under the right-of-way of any railroad, or requires that the tracks of any railroad be extended on, over or under the right-of-way of any public utility, the commission may order the extension by the public utility or railroad on, over or under the right-of-way of the other if it will not materially impair the ability of the railroad or public utility on, over or under whose right-of-way the extension would be made, to serve the public. The commission shall prescribe lawful conditions and compensation which the commission deems equitable and reasonable in light of all the circumstances.

We conclude that the statute does not require the commission to find that WCL's terms are unreasonable and inequitable before prescribing terms of its own. We also hold that the commission acted within the scope of its authority when it determined that WCL should be compensated for the diminution in value of its property and any consequential costs incurred directly as a result of WSG's installations. Finally, we conclude that there is substantial evidence to support the commission's finding of a nominal diminution in value at private crossings and that the commission's determination that there is no additional burden imposed at the public crossings is not erroneous as a matter of law. Therefore, we affirm.

## I.  BACKGROUND

WCL is a privately held railroad which purchased a substantial portion of the assets of the Lake States Division of the Soo Line Railroad in 1987. WCL currently operates in Wisconsin, Michigan, Illinois, and Minnesota, with approximately two-thirds of its track located in Wisconsin. WSG is a public utility which provides natural gas service to approximately 42,000 customers in southeastern Wisconsin.

In mid-1988, WSG notified WCL that in order to serve customers in the Honey Creek area of Racine county, it intended to run its pipelines under WCL's tracks in three separate locations. The proposed crossings were located where public roadways also cross WCL's property and the pipelines were to be laid beneath and perpendicular to the railroad's tracks within the right-of-way of the public roadway.

WCL requested that WSG sign its standard license agreement for each crossing. The agreement calls for the payment of a one-time preparation fee of $250 and an

annual license fee of $300, payable five years in advance. The preparation fee is designed to recover the actual costs WCL incurs on an average, system-wide basis for surveying and drafting a site print when a utility seeks to cross its property. The annual license fee is intended to recover WCL's costs in managing and administering the license agreement, such as recordkeeping, track inspection, and risk management, and to compensate WCL for the value of the rights granted to the licensee. The agreement also imposes numerous other conditions on the licensee, including WCL's right to terminate the agreement without cause on thirty-days' notice and the requirement that all carrier pipe under WCL's track be encased in a second steel pipe.

When WSG refused to sign the agreements, WCL threatened to obtain a court injunction to halt construction. To avoid delays in extending service to Honey Creek, WSG signed the agreements with an addendum that allowed WSG to seek review by the commission and provided that the agreements would be modified in conformity with any order entered by the commission (including any modification resulting from an appeal).

In August 1988, WSG filed its application with the commission for an order permitting extension of its pipelines under WCL's tracks.[2] WSG requested the commission to order that no license agreement was required at public crossings or, in the alternative, that the commission determine reasonable and equitable terms and compensation. With respect to the private crossing,

---

[2]This case also involves a fourth crossing where there is no public roadway. This private crossing was covered by an agreement with the Soo Line which expired on September 1, 1988. WSG also signed an agreement for this crossing containing the addendum discussed above.

WSG asked that the commission determine reasonable and equitable terms and compensation.

Several utilities intervened in the case. A hearing was held over four days in February 1989, and in November 1989, the commission entered its order. The commission found that the installation of WSG's facilities within the public right-of-way imposed no additional burden on WCL's property and that WCL was not entitled to any compensation for these public crossings. For the private crossing, the commission concluded that WCL was entitled to compensation calculated by the diminution in property value after installation of the pipeline. The commission found the diminution in value in this case and in most cases of this nature to be negligible, awarding WCL the nominal amount of one dollar.

For all crossings, public or private, the commission ordered that WCL receive compensation for consequential damages that result directly from the placing of WSG's pipelines under WCL's tracks. These included expenses incurred to prepare, flag, or inspect the site before, during, or after construction, and administrative costs associated with marking and recording the pipeline's location. The commission stated specifically that consequential costs excluded indirect costs attributable to other WCL programs and operations and any profit component. Because the commission found that the record was not adequate to determine these costs precisely and that some of these costs would be incurred in the future, the commission directed WCL to bill WSG for the actual expenses incurred, including reasonable overhead. The commission retained jurisdiction to resolve any disputes over such billings.

The commission also made findings and prescribed terms on disputed matters other than compensation, such as liability insurance, requirements for mainte-

nance and emergency repairs, and the termination of the crossing right. These issues are not before us on this appeal.

WCL sought review of the commission's order under ch. 227, Stats., in the circuit court for Portage county. Venue was changed to Dane county. After the filing of briefs and oral argument, the trial court affirmed the commission's order with the clarification that if circumstances changed so that the crossing materially impaired WCL's ability to serve the public, WCL could revoke the crossing right after obtaining commission approval.

## II.  SCOPE AND STANDARD OF REVIEW

Our scope of review under ch. 227, Stats., is identical to that of the trial court; we review the decision of the commission, not the court. *Wisconsin Pub. Serv. Corp. v. Public Serv. Comm'n,* 156 Wis. 2d 611, 616, 457 N.W.2d 502, 504 (Ct. App. 1990).

Section 196.04(4), Stats., has never been construed by a court or the commission prior to this case. The supreme court has stated that when an agency interprets a statute in a case of first impression and the agency lacks special expertise or experience, our review is *de novo. Jicha v. DILHR,* 169 Wis. 2d 284, 290–291, 485 N.W.2d 256, 258–59 (1992). But where the legislature has specifically charged the agency with the duty of administering and applying the particular statute, we may infer that the agency is competent to interpret the statute and is entitled to a degree of judicial deference in this regard. *Lisney v. LIRC,* 165 Wis. 2d 628, 633–34 n.4, 478 N.W.2d 55, 56–57 n.4 (Ct. App. 1991).

■

The statute's charge to prescribe terms and compensation which are "equitable and reasonable in light of all the circumstances" confers substantial discretion upon the commission. We may not substitute our judgment for that of the commission on an issue of discretion. *DOR v. Dow Jones & Co.*, 148 Wis. 2d 872, 876–77, 436 N.W.2d 921, 923 (Ct. App. 1989); sec. 227.57(8), Stats. Rather, we review the commission's order to determine whether it was arbitrary or capricious and whether the commission's findings of fact are supported by substantial evidence. *See Chicago & N. W. Ry. v. Public Serv. Comm'n*, 43 Wis. 2d 570, 581–82, 169 N.W.2d 65, 70 (1969). We do so here.

### III. REQUIREMENT TO FIND WCL'S TERMS UNREASONABLE ´

■

WCL claims that the commission abused its discretion by prescribing its own terms and conditions for the crossing without first finding that the terms in WCL's standard license agreement were inequitable and unreasonable. We reject this argument on two grounds. First, from the language of the statute, the commission may set the terms of the crossing: (1) if the parties cannot agree on terms; (2) public convenience and necessity require the extension of the utility's lines under the railroad's tracks; and (3) the extension of the lines will not materially impair the railroad's ability to serve the public. Nowhere does the statute require that the commission find that the licensor's proposed terms are unreasonable before prescribing its own terms.

Second, in enacting other statutes, the legislature has authorized the commission to act only after it finds the entity has acted unreasonably. *See* sec. 196.37(1) and

568

(2), Stats. (circumstances under which the commission shall prescribe rates and services to be provided). The absence of a comparable provision in sec. 196.04(4), Stats., indicates that the legislature did not intend that the commission first find a party's proposed terms inequitable and unreasonable.

WCL also argues that the commission did not give it adequate notice of the issues to be heard. The notice of the commission's hearing stated that one of the designated issues was the reasonableness of WCL's terms. By failing to first make a specific finding on WCL's terms, the commission allegedly deprived WCL of its right to be apprised of the issues involved in the case and to be heard on those issues. The argument fails because WCL has not made any showing that it would have conducted the case differently or that it was prejudiced by the hearing notice.

## IV. COMPENSATION FOR PRIVATE CROSSINGS

### A. *Method of Measurement*

The commission determined that WCL's compensation for the private crossing should consist of two components: (1) compensation for the right of crossing, which is measured by the diminution in value of the right-of-way after installation of WSG's pipeline; and (2) compensation for the consequential damages that result directly from the construction and maintenance of the utility's crossing.

WCL argues that using the diminution in value approach misinterprets sec. 196.04(4), Stats. WCL claims that if the legislature had intended diminution in value as the appropriate measure, it would have made an

express provision in the statute as it did in sec. 32.09(6g), Stats., which specifies the compensation to a property owner for a utility easement. WCL maintains that the broad "equitable and reasonable" standard requires that WCL be compensated for the benefit to the utility of the crossing as well as WCL's loss.

WCL attacks the consequential damages component as being outside the scope of the commission's authority. The commission distinguished between direct and indirect costs and ordered WCL to bill WSG only for direct costs, including reasonable overhead. WCL argues that the language of the statute neither warrants the distinction nor should it preclude recovery of administrative costs which WCL cannot identify on a "one-for-one" basis with specific license agreements.

■

As discussed above, sec. 196.04(4), Stats., grants broad discretion to the commission and we may not reverse its order unless we find that it has acted in an arbitrary or capricious manner. We now apply this standard to the commission's method of compensation.

The commission selected the diminution in value measure after considering the testimony of the parties' two experts on valuation. The commission regarded it as the method which "best comports with the statutory 'equitable and reasonable' standard." The commission also noted that the supreme court had selected diminution in value as the appropriate compensation to a railroad when a new highway was constructed across its tracks, a situation analogous to the case at bar. *See Green Bay & W. R.R. v. Public Serv. Comm'n,* 269 Wis. 178, 189–91, 68 N.W.2d 828, 833–34 (1955). These considerations provide a rational basis for the diminution in value approach.

Furthermore, the commission's overall method of compensation reasonably balances competing interests and achieves several important objectives. First, it permits WSG to provide natural gas service in a cost-efficient manner, which in turn benefits the ratepayers. Second, it ensures that WCL is in no worse an economic position as a result of the pipeline crossing. Finally, it is consistent with the legislative intent underlying the statute.[3]

We conclude that the commission's method of compensating WCL for the private crossing represented a reasonable exercise of its discretion under sec. 196.04(4), Stats.

## B. *Negligible Diminution in Value*

WCL argues that the commission's finding of negligible diminution in property value at the private crossing is not supported by substantial evidence. The substantial evidence test is met if the evidence and the inferences from that evidence are such that a reasonable person might have made the same finding the commission did. *Gibson v. State Pub. Defender,* 154 Wis. 2d 809, 813, 454 N.W.2d 46, 48 (Ct. App. 1990). Substantial evidence may support conflicting findings. If it does, we

---

[3]The Legislative Reference Bureau's drafting file for ch. 712, Laws of 1951, which created sec. 196.04(4), Stats., contains the following comment:

> At the present time situations have arisen whereby railroads have attempted to impose what appear to be very high charges as a condition to permitting public utilities to extend wires across their right-of-way. This bill is intended to provide a procedure whereby such situations could be handled on a reasonable basis.

must accept the commission's choice, notwithstanding the reasonableness of contrary findings. *Id.*

The commission's finding of negligible diminution in value was largely based on the testimony of the utilities' expert witness, Dr. Karvel. Dr. Karvel, a professor of real estate at St. Cloud State University, testified that when a public utility seeks an easement or license, the appropriate measure of compensation would be the difference between the highest and best use of the land before the lines are installed and the highest and best use after the lines are installed. According to Dr. Karvel, the benefit of the easement or license to the grantee should only be considered if the grantee is not a regulated utility. Dr. Karvel also stated that he inspected the four crossings in this case the day before he testified, and that, using what he termed an observable condition methodology, he found that there was no difference in the highest and best use of the land as a result of WSG's pipeline extensions.

On cross-examination, Dr. Karvel stated that he did not belong to the American Institute of Real Estate Appraisers (AIREA), but that he had taught courses for the organization. He admitted to having limited knowledge of railroad operations and that he had not prepared a written report to support his valuation opinions. On surrebuttal, Mr. Dorchester, WCL's valuation expert and past president of AIREA, testified that contrary to Dr. Karvel's claim, the observable condition methodology was not consistent with AIREA standards. Furthermore, he noted that the AIREA code of ethics requires an appraiser offering expert testimony on valuation to first prepare a report that documents the data and reasoning behind his or her opinion.

WCL claims that Dr. Karvel's testimony "was so contradicted, impeached and undercut that it simply cannot provide the type of substantial evidence that is needed to support the [c]ommission's finding that there was no diminution in the value of WCL's property." The impeachment and surrebuttal go to Dr. Karvel's credibility and the weight to be given his testimony. It is not the role of this court to evaluate either the weight or credibility of evidence. *Tatum v. LIRC,* 132 Wis. 2d 411, 417, 392 N.W.2d 840, 842 (Ct. App. 1986).

Based on the evidence as a whole and the reasonable inferences from that evidence, we conclude that a reasonable person could have reached the same conclusion as the commission. Therefore, the commission's finding of negligible diminution in value must not be disturbed.

## V.   COMPENSATION FOR PUBLIC CROSSINGS

The commission ordered that WCL was only entitled to reimbursement of its consequential damages. The commission concluded that installation of WSG's pipelines within the right-of-way of a public roadway imposed no additional burden upon WCL's property and warranted no compensation for the crossing right. WCL contends that the commission's conclusion is erroneous as a matter of law. Because the commission was interpreting Wisconsin case law in a case of first impression, we review this issue *de novo. Jicha,* 169 Wis. 2d at 291, 485 N.W.2d at 259.

WCL relies on *Krueger v. Wisconsin Tel. Co.,* 106 Wis. 96, 81 N.W. 1041 (1900). In *Krueger,* the telephone company placed a pole on a street corner, obstructing the view from the drugstore located at that corner. The court

held that the city's easement was for a public highway and that the placement of the pole was inconsistent with public travel and imposed an additional servitude upon the land. *Id.* at 108–09, 81 N.W. at 1045.

We disagree that *Krueger* is controlling. In *Krueger,* the utility placed a pole aboveground without approval from city officials. WSG, on the other hand, installed underground pipelines with approval from Racine county and the town of Rochester.

Furthermore, the supreme court cast serious doubt on the *Krueger* rule when it stated:

> While it has been held that, when public authorities acquire title for purposes of public travel, sewers and other conduits may with the permission of the city be laid within the line of the street, such use of the street is an incident to the right to use the way for street purposes. No attempt has ever been made to condemn the premises in question for any use. . . other than street purposes. Upon what theory the property of the adjoining owner can be used for purposes which are not directly connected with public travel without imposing an additional burden, we do not need to inquire at the present time as it is undoubtedly the established law that it is subject to such use.

*Miller Inv. Co. v. City of Milwaukee,* 209 Wis. 517, 523, 244 N.W. 753, 756 (1932); *Miller v. City of Wauwatosa,* 87 Wis. 2d 676, 683, 275 N.W.2d 876, 879 (1979).

*Miller Inv. Co.* and *Miller* did not address the issue of burden imposed by utility installations in a public roadway right-of-way. However, persuasive authority exists in other jurisdictions which have held that construction of a water main within a public highway right-of-way did not place an additional burden on the land

over which the highway ran.[4]

Based on the above statements of the Wisconsin Supreme Court and case law in other jurisdictions, we conclude that the rule in Wisconsin is that the placement of natural gas pipelines within a public roadway right-of-way does not impose an additional burden upon the land for which the fee owner must be compensated.

*By the Court.*—Judgment affirmed.

---

[4]*See Chicago Title & Trust Co. v. Village of Burr Ridge,* 354 N.E.2d 61 (Ill. App. Ct. 1976); *Governale v. City of Owosso,* 198 N.W.2d 412 (Mich. 1972); *Ziegler v. Ohio Water Serv. Co.,* 247 N.E.2d 728 (Ohio 1969).