WISCONSIN PROFESSIONAL POLICE ASSOCIATION; Wisconsin Law Enforcement Officers' Association; Terry Perry, Coordinator, City of Milwaukee Common Council Task Force on Sexual Assault and Domestic Violence; Robert Overs; Leslie Bird, Executive Director, Dane County Advocates for Battered Women; Michael Hanrahan; Becky Westerfelt, Executive Director, Rape Crisis Center, Dane County; Kathleen Krenek, Policy Development Coordinator, Wisconsin Coalition Against Domestic Violence; David Rossow; Ruth Robarts, Executive Director, 1199W/United Professionals For Quality Health Care/SEIU; Carole Smolizer; Wisconsin Association of Personnel Services; Frank Evans; Computer Professionals for Social Responsibility; Teresa Meuer, Coordinator, Wisconsin Crime Victim's Council; Citizens Utility Board; Anne Baldwin; Nancy Bosin; Maria Gale Beyer; Gordon Lipsky; Ken McFadden; Sally Schmid; Raechel Foertser; and Don Schwamb, Petitioners-Respondents,†

v.

PUBLIC SERVICE COMMISSION OF WISCONSIN, Respondent-Co-Appellant,

WISCONSIN BELL, INC., Intervenor-Appellant.

Court of Appeals

*No. 95–2438. Oral argument June 25, 1996.—Decided September 30, 1996.*

(Also reported in 555 N.W.2d 179.)

† Petition to review denied.

For the respondent-co-appellant the cause was submitted on the briefs of *Steven M. Schur* and *Steven Levine* of the *Public Service Commission of Wisconsin* and orally argued by *Steven Levine*.

For the intervenor-appellant the cause was submitted on the briefs of *Michael A. Green* and *Michael Paulson* of Milwaukee and orally argued by *Michael Paulson*.

For the petitioners-respondents the cause was submitted on the brief of *Lynn Adelman* and *Jon Deitrich* of *Adelman, Adelman & Murray, S.C.* of Milwaukee and orally argued by *Lynn Adelman*.

Before Dykman, P.J., Vergeront, J., and Robert D. Sundby, Reserve Judge.

DYKMAN, P.J. The Public Service Commission of Wisconsin and Wisconsin Bell, Inc. appeal from a circuit court order reversing the decision of the commission to allow per-line blocking of Caller ID[1] only on a limited basis and remanding the matter to the commission. The issues on appeal are: (1) whether the commission's decision is supported by substantial evidence or is arbitrary or capricious; and (2) whether the commission's decision violates the Federal Electronic Communications Privacy Act (ECPA). We conclude that the commission's decision is supported by sub-

---

[1] "Caller ID" refers to the "caller identification service" defined in § 196.207(1)(c), STATS., as "a telecommunications service offered by a telecommunications utility that identifies a telephone line identification for an access line that is used by a person to originate a telephone call to a subscriber to the service."

63

stantial evidence, is not arbitrary or capricious, and does not violate the ECPA. We therefore reverse.

## BACKGROUND

Caller ID allows a person receiving a telephone call to view the originating telephone number of the call before answering the telephone. It operates under a generic computer program known as "Signalling System 7" (SS7), which allows information associated with a telephone call to be transmitted in the same "band" as the actual call. In Caller ID, the accompanying information is the call's originating telephone number.

Transmission of a telephone number can be blocked in two ways: per-call blocking and per-line blocking. In per-call blocking, a caller can block transmission of his or her telephone's number by dialing *67, or 1167 on a rotary phone, for that call only. When a call is blocked in per-call blocking, the letter "P" or the word "private" appears on the Caller ID screen of the phone call recipient. In per-line blocking, the telephone number is blocked from transmission on every call from a blocked line unless the user dials *67 to disable the block for a particular call.[2]

On May 5, 1992, Wisconsin Bell applied to the commission for authority to offer Caller ID in selected exchanges within its local exchange network.[3] On May 27, 1992, the commission decided to investigate the conditions of service that could apply to Caller ID. On June 1, 1992, a coalition of Wisconsin citizens, con-

[2] The Public Service Commission ordered each utility to implement a code other than *67 for unblocking per-line blocking, if such a code becomes available, to eliminate potential confusion with the *67 per-call blocking feature.

[3] North-West Telephone Company and Sullivan Telephone Company submitted similar applications on May 6, 1992.

sumer groups and advocacy organizations intervened, asking the commission to condition its approval of Caller ID upon the availability of free per-line blocking for anyone requesting it.

The commission conducted several hearings between February and August of 1993. On April 28, 1994, the commission approved the Caller ID service proposed by Wisconsin Bell. The commission's order provided that free per-call blocking must be provided on every access line in an exchange where Caller ID is offered unless it is not feasible to do so.[4] However, the commission did not require the utilities to offer free per-line blocking to any subscriber requesting the service. Instead, the commission ordered the utilities to provide free per-line blocking on an optional basis to selected subscribers: (1) victims of domestic violence, shelters and other organizations serving victims of domestic violence and other public safety agencies; (2) any person protected by an injunction, temporary restraining order, or other court order relating to domestic abuse, harassment or child abuse; (3) any municipal, county, state or federal law enforcement agency, fire department, public social service agency or parole office; and (4) the residential access line of any staff member employed by an eligible organization or any residential access line designated by an eligible organization as serving a victim of domestic violence.

Respondents appealed the decision to the circuit court under Chapter 227, STATS., challenging those aspects of the commission's order that limit the availa-

---

[4] This condition is mandated by statute. Under § 196.207(2)(c), STATS., "The telecommunications utility may not charge an access line customer for withholding the customer's telephone line identification from identification on an individual call basis."

65

bility of per-line blocking. The circuit court reversed the commission's order as it applied to per-line blocking and remanded the matter to the commission for a redetermination of its decision. The commission and Wisconsin Bell appeal.

## LIMITED LINE-BLOCKING

Under § 196.207(2), STATS., the commission may not approve a schedule or tariff that permits Caller ID to be offered unless the schedule or tariff meets certain conditions. Under § 196.207(2)(e), a schedule or tariff must offer free per-line blocking to victims of domestic violence protected by a court order, domestic violence victim's service programs, and battered women's shelters or other organizations that provide a safe haven for victims of domestic violence. The commission's order satisfied this condition.

Section 196.207(2m), STATS., gives the commission discretion to order that telecommunications utilities offer per-line blocking on a broader scope:

> PER LINE BLOCKING. Under any schedule or tariff that the commission approves, the commission may require that a telecommunications utility that offers a telephone caller identification service to permit an access line customer to choose to withhold the customer's access line identification from identification for all calls originating from the customer's access line.

The commission did not order the telecommunications utilities to offer per-line blocking universally, but instead limited its availability to a few defined groups. Respondents challenge both the commission's factual findings and its discretionary decision to order that per-line blocking be offered only on a limited basis. We review the decision of the agency and not the decision

of the trial court. *Liberty Trucking Co. v. DILHR*, 57 Wis. 2d 331, 342, 204 N.W.2d 457, 463-64 (1973).

*Substantial Evidence Test*

We review the agency's factual findings pursuant to § 227.57(6), STATS., under which we will "set aside agency action or remand the case to the agency if [we find] that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record." Substantial evidence does not mean a preponderance of the evidence. *Madison Gas & Elec. Co. v. Public Serv. Comm'n,* 109 Wis. 2d 127, 133, 325 N.W.2d 339, 342 (1982). Rather, the substantial evidence test is satisfied when reasonable minds could arrive at the same conclusion as the commission when taking into account all evidence in the record. *Id.* at 133, 325 N.W.2d at 342-43. We do not judge the credibility of witnesses or weigh the evidence. *Shoreline Park Preservation, Inc. v. Wisconsin Dep't of Admin.*, 195 Wis. 2d 750, 761, 537 N.W.2d 388, 391-92 (Ct. App. 1995). We will set aside the commission's findings only if a reasonable person could not have made the findings from the evidence. *Daly v. Natural Resources Bd.*, 60 Wis. 2d 208, 220, 208 N.W.2d 839, 846 (1973), *cert. denied,* 414 U.S. 1137 (1974).

The commission made what it characterized as "three important findings," and respondents challenge each of these findings as not supported by substantial evidence. We will address each finding in turn.

The commission's first important finding reads as follows:

[T]he Commission finds that [Caller ID] can accomplish important public interest functions, such as

discouraging harassing and prank telephone calls, providing both a list and a verification of the telephone numbers of callers, and assisting law enforcement and public safety agencies.

With regard to the effectiveness of Caller ID in discouraging harassing and prank telephone calls, Kathryn Conrow of Wisconsin Bell testified:

> Based on the experience of other Ameritech companies where Caller ID is available, the Company believes Caller ID will reduce the number of obscene, prank, and harassing calls received by our customers. Michigan, Illinois, and Indiana Bell have all experienced a reduction in the number of complaints received by their annoyance call bureaus. In New Jersey, authorities reported a dramatic decrease in obscene, prank and harassing calls attributable to the mere offering of Caller ID.

Conrow also testified that Caller ID can provide a list of telephone numbers along with the date and time of the call. With respect to phone number verification, Tom Anderson of Domino's Pizza testified that after subscribing to Caller ID in New Jersey, Domino's Pizza experienced a ninety percent reduction in undeliverable orders and a substantial decrease in the number of driver robberies. Caller ID can also be used by public safety personnel to identify the number of the telephone from which an emergency call was placed in areas not served by enhanced 911 or when the emergency call was not placed to 911. Based on the evidence, we conclude that a reasonable person could have made the commission's first important finding.

In support of their argument that the commission's first finding is not supported by substantial

evidence, respondents contend that there are ways more effective than Caller ID to prevent harassing calls, to screen calls and to authenticate calls. However, this assertion does not refute the commission's findings; rather, it only states that Caller ID may not be the most effective method to accomplish these goals. The fact that other mechanisms may be more effective than Caller ID is not relevant to the issue of whether the commission's findings are supported by substantial evidence.

Respondents also attempt to discredit as speculation the testimony of several people who expressed the belief that Caller ID could have helped them avoid harassment. Assuming, *arguendo*, that the commission should not have considered this testimony, its finding is still reasonable based on the other testimony.

The commission's second important finding reads as follows:

> [T]he Commission concludes that at present there does not exist a general societal expectation or norm that a person placing a telephone call has the right to remain anonymous or refuse to identify him or herself to the called party. To the contrary, a visitor in person or by telephone is generally expected to provide his or her identity prior to being offered admittance to another's home.

In support of this second finding, Conrow testified:

In market research conducted in Wisconsin, 80% of the customers surveyed stated that they had made no calls within the previous thirty days where they would not have wanted to have their telephone number displayed to the called party. Of the 20% that indicated a desire not to disclose their number,

56% stated that they would have blocked their number on fewer than 10% of their outgoing calls. Only 12% of the 20% (2.4% of the total) indicated a desire to block their number at all times. . . .

. . . The normal treatment of a telephone number is to have it listed in the directory and available from directory assistance. The omission of a number from the directory and from directory assistance is the exception, not the rule; hence the charge for non-listed and non-published numbers in Wisconsin Bell's tariff. State law also favors disclosure of the identity of parties to a call; it is a misdemeanor under Sec. 947.012(5) of the Statutes[5] for a person to make a telephone call without disclosing his or her identity.

In addition, Dennis Klaila, a commission rate analyst, testified that he did not believe an expectation of privacy exists regarding the disclosure of a calling party's telephone number to the called party.[6] Based on the

[5] We assume that Conrow was referring to § 947.012(1)(c), STATS., which provides: "Whoever does any of the following is guilty of a Class B misdemeanor: . . . Makes a telephone call, whether or not conversation ensues, without disclosing his or her identity and with intent to abuse or threaten any person at the called number." In addition, under § 947.012(2)(d) , "Whoever does any of the following is subject to a Class B forfeiture: . . . Makes a telephone call, whether or not conversation ensues, without disclosing his or her identity and with intent to harass any person at the called number."

[6] In support of his conclusion, Klaila listed the following factors: (1) published and non-listed subscribers (whose telephone numbers are available through directory assistance) have chosen to place their directory listing in the public domain; (2) the disclosure of the calling party's number to the called party routinely occurs with some interstate calls; (3) the calling party's directory listing has not been recognized as personal information in any state statute or commission regulation;

testimony, we conclude that a reasonable person could have made the commission's second important finding.

Respondents argue that the commission's finding that a calling party has no reasonable expectation of privacy was based solely on the testimony of Klaila. Respondents maintain that no deference should be given to the testimony of Klaila because he was rendering a legal opinion on legislation and the constitution and has no experience in constitutional or privacy rights. Respondents argue that we should instead rely on Dr. Francis Collins, a consultant in various areas of telecommunications, and Dr. Rohan Samarajiva, a communications professor at Ohio State University, who both testified that Caller ID drastically departed from historical norms of privacy. In support of their argument, respondents cite *DeRosso Landfill Co. v. City of Oak Creek*, 191 Wis. 2d 46, 63, 528 N.W.2d 468, 475 (Ct. App. 1995), *rev'd on other grounds*, 200 Wis. 2d 642, 547 N.W.2d 770 (1996), which states that "deference is not given [to an agency's interpretations of the statutes under which it operates] when that interpretation is founded upon nothing but the opinions of the agency's subordinate employees."

We disagree with respondents' argument for two reasons. First, the commission's finding was supported by testimony other than the testimony of Klaila. Second, respondents are not challenging the commission's decision on constitutional grounds, and therefore the commission need not have disregarded Klaila's testi-

_____

(4) the commission has not considered and has not decided whether non-published customers have a greater expectation of or right to privacy than the general public; and (5) Caller ID discloses the calling party's telephone number only to a limited audience (the called party) and is not generally disclosed.

·mony solely because of his lack of expertise in constitutional privacy rights.[7]

The commission's third important finding reads as follows:

> [T]he record indicates that there are some unique situations where Caller ID could well present a danger, such as to domestic abuse victims and law enforcement personnel. To prevent such problems, the Commission will require the applicant utilities to provide free-of-charge blocking [on a limited basis].

Respondents do not appear to dispute the first sentence of this finding, but rather seem to advocate universally available per-line blocking because Caller ID could present a danger in certain situations. Therefore, we will not review this finding.

Respondents do argue that the commission's finding that limited per-line blocking would prevent the dangerous situations Caller ID might create was not supported by substantial evidence. To characterize the second sentence of the commission's third finding as a finding of fact is erroneous, however. This sentence does not make factual findings, but sets forth the commission's decision to require per-line blocking on a limited basis and explains that per-line blocking will be offered on a limited basis to prevent problems in some unique situations. Because this sentence does not

---

[7] Furthermore, several courts have already ruled that there is no federal constitutional privacy right to protection from disclosure of telephone numbers via Caller ID. *See California v. FCC*, 75 F.3d 1350, 1361-62 (9th Cir.), *cert denied*, 116 S. Ct. 1841 (1996); *Ohio Domestic Violence Network v. Public Utilities Comm'n*, 638 N.E.2d 1012, 1019 (Ohio 1994); *Southern Bell Tel. & Tel. Co. v. Hamm*, 409 S.E.2d 775, 779-80 (S.C. 1991).

make findings of fact, we will not review it under the substantial evidence test. *See* § 277.57(6), STATS.

Respondents also argue that the commission's finding that the benefits of Caller ID were so substantial as to justify denying most people the choice of per-line blocking was not supported by substantial evidence. Again, we review only an agency's factual findings under the substantial evidence standard. *See* § 277.57(6), STATS. The commission's decision to offer per-line blocking on a limited basis was not a factual finding, but a discretionary decision. Therefore, we will not consider whether the commission's decision was supported by substantial evidence; rather, we will review the commission's decision under the arbitrary and capricious standard. *See Wisconsin Cent. Ltd. v. Public Serv. Comm'n,* 170 Wis. 2d 558, 568, 490 N.W.2d 27, 31 (Ct. App. 1992).

## *Arbitrary and Capricious Test*

Respondents argue that the commission's rationale for denying the option of per-line blocking to most consumers was so unconvincing as to be arbitrary and capricious. In § 196.207(2m), STATS., the legislature delegated to the commission the decision whether to extend the availability of per-line blocking beyond the groups listed in § 196.207(2)(e). We review an agency's discretionary decision under § 227.57(8), STATS.[8] We

---

[8] Section 227.57(8), STATS., provides as follows:

> The court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is outside the range of discretion delegated to the agency by law; is inconsistent with an agency rule, an officially stated agency policy or a prior agency practice, if deviation therefrom is not explained to the satisfaction of the court by the agency; or is otherwise in violation of a constitu-

may not substitute our judgment for that of the commission on an issue of discretion; rather, we review the commission's decision to determine whether it is arbitrary or capricious. *Wisconsin Cent. Ltd. v. Public Serv. Comm'n,* 170 Wis. 2d 558, 568, 490 N.W.2d 27, 31 (Ct. App. 1992). Arbitrary or capricious conduct lacks a rational basis and is the result of an unconsidered, willful or irrational choice rather than a "sifting and winnowing" process. *Robertson Transp. Co. v. Public Serv. Comm'n,* 39 Wis. 2d 653, 661, 159 N.W.2d 636, 640 (1968).

Respondents argue that the decision was arbitrary and capricious because the commission admitted that the "extent to which a reduction in abusive and harassing calls depends on limiting the availability of per-line blocking is not known." Respondents also argue that per-call blocking does not adequately protect individuals with nonlisted and nonpublished numbers, privacy expectations, and vulnerable groups.[9] Thus, respondents argue, the decision is contrary to the commission's purpose to protect the consuming public. *See Wisconsin's Envtl. Decade, Inc. v. Public Serv.*

tional or statutory provision; but the court shall not substitute its judgment for that of the agency on an issue of discretion.

[9] For example, Kathleen Krenek, policy development coordinator for the Wisconsin Coalition Against Domestic Violence, Becky Westerfelt of the Dane County Rape Crisis Center and Teresa Meuer, staff attorney for the Wisconsin Crime Victims Council all opposed Caller ID without per-line blocking; police officers advocated per-line blocking so they would not need to use a per-call block when working undercover; and Stuart Levitan of the Dane County Fair Housing Council testified that without per-line blocking, Caller ID would lead to sophisticated red-lining techniques.

*Comm'n*, 81 Wis. 2d 344, 351, 260 N.W.2d 712, 715-16 (1978).

Under § 227.57(8), STATS., however, the commission's discretionary decision did not need to be supported by statistical data showing the effectiveness of limited per-line blocking on reducing harassing calls, nor did it need to establish that limited per-call blocking was the most effective method of protecting certain groups and privacy interests. Instead, the commission's decision must have a rational basis. *Robertson Transp.*, 39 Wis. 2d at 661, 159 N.W.2d at 640.

■

The commission's order shows that its decision to offer per-line blocking on a limited basis was not arbitrary or capricious. The commission provided the rationale for its decision:

> The Commission finds that the requirement for dialing a blocking signal each time a calling party dials a telephone number properly balances the calling party's need for anonymity against the public's interest in responsible use of the telephone network. The central issue in this docket is whether the calling party should be able to remain anonymous while intruding on the solitude of the called party. Per-call blocking resolves this issue by allocating the burden of labor and expense related to withholding identification to the calling party. The Commission finds that this labor and expense is an appropriate means to ensure that the blocking option is employed in rough proportion to the calling party's actual need for anonymity and preserves the principal benefit of the service, which is a reduction in the incidence of abusive and harassing calls.

The commission's order indicates that its decision was not the result of an unconsidered, willful or irra-

tional choice. Rather, by weighing the interests of the "calling party" and the "called party," both members of the consuming public, the commission engaged in a "sifting and winnowing" process. Therefore, its decision was not arbitrary or capricious.

Respondents argue that the commission's decision with respect to per-line blocking is inconsistent with decisions in many states. But when determining whether the commission properly exercised its discretion, we are to review the facts presented at the hearing before the commission, not the decisions of other jurisdictions. *See* § 227.57(6), STATS. The fact that other jurisdictions may have come to a different conclusion, therefore, is irrelevant.

Respondents also maintain that the commission's order provides no appeal procedure, but fail to state why this would make the commission's decision arbitrary and capricious. Nonetheless, the statutes do provide an appeal procedure. Under § 196.26, STATS., if any body politic, municipal organization or twenty-five persons file a complaint with the commission that any schedule, regulation, act or practice relating to the provision of telephone service is unreasonable, inadequate, unjustly discriminatory or cannot be obtained, the commission may investigate the complaint as it deems necessary. Thus, if a group believes that a telephone utility unjustly denied per-line blocking from its members, it may file a complaint with the commission. Further, administrative decisions that adversely affect the substantial interests of any person, whether by action or inaction, are subject to judicial review. Section 227.52, STATS.

## FEDERAL ELECTRONIC COMMUNICATIONS PRIVACY ACT

Respondents argue that without a per-line blocking option, Caller ID violates the Federal Electronic Communications Privacy Act (ECPA), which provides in relevant part:

> (a) IN GENERAL.—Except as provided in this section, no person may install or use a . . . trap and trace device without first obtaining a court order . . . .
>
> (b) EXCEPTION.—The prohibition of subsection (a) does not apply with respect to the use of a . . . trap and trace device by a provider of electronic or wire communication service—
>
> . . . .
>
> (3) where the consent of the user of that service has been obtained.

18 U.S.C. § 3121. The parties agree that Caller ID uses a "trap and trace device"[10] within the meaning of the statute. They disagree, however, as to whether Caller ID falls within the exception of § 3121(b)(3).

Respondents first argue that individual subscribers, not the telephone company, use Caller ID. Therefore, respondents contend, the exception does not apply to Caller ID because the exception only applies with respect to "the use of a trap and trace device by a provider" of telecommunications services. *See* 18 U.S.C. § 3121(b).

---

[10] "As used in this chapter [18 U.S.C. § 3121 et seq.] . . . the term 'trap and trace device' means a device which captures the incoming electronic or other impulses which identify the originating number of an instrument or device from which a wire or electronic communication was transmitted." 18 U.S.C. § 3127(4).

In support of their argument, respondents cite *Barasch v. Bell Tel. Co.*, 605 A.2d 1198 (Pa. 1992), in which the Pennsylvania Supreme Court determined that Caller ID violated Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 PA. CONS. STAT. §§ 5701-5781. Section 5771(b)(2) of Pennsylvania's Act, like the ECPA, permitted the use of a trap and trace device "by a provider of electronic or wire communication service . . . with the consent of the user of the service." The court maintained that the "most obvious flaw in [the argument that Caller ID falls within this exception], of course, is that the [Caller ID] subscriber is not an electronic or communicating service provider." *Barasch*, 605 A.2d at 1202.

Although the Pennsylvania court is correct in concluding that a Caller ID subscriber is not an electronic or communicating service provider, we fail to see how this assertion removes Caller ID from the exception. Section 3121(b) of the ECPA provides an exception to § 3121(a) in certain situations "with respect to the use of a . . . trap and trace device by a provider of electronic or wire communication service." Therefore, under § 3121(b) the relevant inquiry is not "is a Caller ID subscriber a telecommunications service provider?" Rather, § 3121(b) directs us to ask "is the trap and trace device used by a telecommunications provider?"

In answering this question, we find the reasoning of the Ohio Supreme Court in *Ohio Domestic Violence Network v. Public Utilities Comm'n*, 638 N.E.2d 1012 (Ohio 1994), persuasive. In *Ohio Domestic Violence Network*, the court considered whether Caller ID fell within the exception to 18 U.S.C. § 3121(a). The court concluded that the Caller ID display used by a subscriber was not a trap and trace device; rather, the trap

and trace device used in Caller ID was provided by the equipment and software of the telephone company. The court reasoned:

> Specifically, we agree that the Caller ID display unit standing alone is incapable of performing a trap and trace apart from the CCS/SS7 signalling equipment and software necessary to use it, and that it is this equipment that performs the trap and trace.

*Id.* at 1021. Therefore, according to the Ohio Supreme Court, because the telephone company's equipment and software perform the trap and trace, it is the telecommunications service provider, not the subscriber, who uses a trap and trace device within the meaning of § 3121(b). We agree with this reasoning.

Second, respondents argue that 18 U.S.C. § 3121(b)(3), by providing that "the consent of the user of that service" must be obtained, requires that both the caller and the called consent to the trap and trace before the exception applies. In *Ohio Domestic Violence Network*, however, the court determined that the ECPA requires "only that one party to a communication consent to its interception." 638 N.E.2d at 1021.

In addition, in *Southern Bell Tel. & Tel. Co. v. Hamm*, 409 S.E.2d 775 (S.C. 1991), the South Carolina Supreme Court came to the same conclusion when construing a similar state statute. South Carolina's trap and trace law provides that no person may install a trap and trace device unless "the consent of the user of that service has been obtained." S.C. CODE ANN. § 17-29-20(3) (Law. Co-op. Supp. 1995). The *Hamm* court determined that the singular term "user" must be understood to refer to the consent of the person being called, i.e., the Caller ID subscriber. 409 S.E.2d at 777.

We agree with the reasoning of the Ohio and South Carolina courts and conclude that only the Caller ID subscriber needs to consent for the 18 U.S.C. § 3121(b)(3) exception to apply.

Respondents argue that if we only require the consent of the Caller ID subscriber, we render the ECPA meaningless because the Caller ID subscriber necessarily consents to the trap and trace. Our construction of the ECPA does not render it meaningless, however. The ECPA is designed to protect telephone users from unauthorized third-party or governmental intrusions and is not intended to protect telephone users from one another. *See Hamm*, 409 S.E.2d at 778. It is consistent with the ECPA's purpose to require only that the Caller ID subscriber consent to the trap and trace.

*By the Court.*—Order reversed.