John W. GIBSON, Petitioner-Appellant,†

v.

STATE PUBLIC DEFENDER, Respondent.

Court of Appeals

*No. 88–2178. Submitted on briefs July 14, 1989.—Decided February 22, 1990.*

(Also reported in 454 N.W.2d 46.)

† Petition to review denied.

809

For the petitioner-appellant the cause was submitted on the briefs of *John W. Gibson* of *Madison.*

For the respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *William H. Wilker,* assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. This is a ch. 227, Stats., review of a decision by State Public Defender Board (Board). The Board sustained the State Public Defender's decision to reduce the number of out-of-court hours attorney John Gibson had billed to the State Public Defender for defending an indigent defendant. The issue is whether the Board's conclusions are reasonable and its findings

are supported by substantial evidence. We conclude they are. Accordingly, we affirm.

## BACKGROUND

Gibson contracted with the State Public Defender to represent Walter Anchico, an indigent defendant charged with second-degree sexual assault. According to the State Public Defender's files, the case was opened February 28, 1986 and was closed January 6, 1987. The trial was originally scheduled for March 24, 1986, was rescheduled to June 15, 1986, and finally began on September 16, 1986. Anchico was convicted after a three-day jury trial. He was sentenced on January 6, 1987.

Gibson billed the State Public Defender $15,849.66, claiming compensation for 38.9 in-court hours and 422.3 out-of-court hours. The bill was accompanied by a seventeen-page document, indicating the character of the services Gibson rendered and the amount of the time spent on each service. The State Public Defender reviewed Gibson's bill and paid him a total of $9,923.05, reducing his out-of-court hours to 245.2. Included with the payment was a form entitled "Explanation of Private Attorney Bill Reduction," indicating the reasons for the bill reduction. Two reasons were indicated for the reduction, only one of which is relevant to this appeal:

> Attorney time was billed in excess of what the agency considered reasonable on this case. Reducing a bill is always a difficult action to take and may be necessary even where time is accurately billed. The reductions do not reflect criticism of the attorney's dedication, but rather acknowledge the limits of the state's ability to pay.

Gibson sought review of the State Public Defender's decision by the Board. *See* sec. 977.08(4), Stats.;[1] and Wis. Adm. Code, sec. SPD 4.03(3). Gibson and Marcus Johnson, Trial Division Chief Officer for the State Public Defender, appeared before the Board. Johnson and Gibson were each allowed thirty minutes for oral arguments, and both presented documentary evidence.

The Board sustained the State Public Defender's decision, concluding that Gibson's original bill was unreasonable because the out-of-court hours were excessive, the amount and character of the services rendered were excessive, and the billing exceeded the customary charges for a case of this nature. Gibson sought judicial review, and the circuit court affirmed the Board's decision. He appeals.

## SCOPE OF REVIEW

██
We review the Board's findings, conclusions, and decision independently of the circuit court. *Doersching v. Funeral Directors,* 138 Wis. 2d 312, 322, 405 N.W.2d 781, 785 (Ct. App. 1987). The scope of our review is defined in sec. 227.57, Stats.

We will set aside or modify an agency action if the agency has erroneously interpreted a provision of law. Sec. 227.57(5), Stats. We may not substitute our judg-

---

[1]Section 977.08(4), Stats., provides:

> At the conclusion of each case, any private local attorney who has been appointed shall submit a copy of his or her bill to the state public defender. The state public defender shall review the bill and reject it or approve it in whole or in part. The state public defender shall then pay the bill according to the rates under sub. (4m). Any attorney dissatisfied with the decision of the state public defender regarding the bill may have the decision reviewed by the board . . ..

ment for that of the agency regarding the weight of the evidence on any disputed finding of fact. However, if the agency's action depends on a finding of fact not supported by substantial evidence in the record, we must set aside the action and remand the case to the agency. Sec. 227.57(6).

The substantial evidence test is met if the evidence and the inferences from that evidence are such that a reasonable person might have made the same finding the agency did. *Bucyrus-Erie Co. v. ILHR Department,* 90 Wis. 2d 408, 418, 280 N.W.2d 142, 147 (1979). Substantial evidence may support conflicting findings. If it does, we must accept the agency's choice, notwithstanding the reasonableness of contrary findings. *Robertson Transport Co. v. Public Serv. Comm.,* 39 Wis. 2d 653, 658, 159 N.W.2d 636, 638 (1968).

## DISCUSSION

This is the first case on the reasonableness of an appointed counsel's fees since the legislature created the State Public Defender Board to review attorney fee determinations by the State Public Defender. *See* 1977 Wis. Laws, ch. 29, sec. 1600, creating ch. 977, Stats. (1977), effective July 1, 1977. Prior to that time, the trial court was responsible for determining the reasonableness of an appointed counsel's fees. *State v. Sidney,* 66 Wis. 2d 602, 225 N.W.2d 438 (1975).

In *Sidney,* the supreme court listed several factors a trial court should consider in determining the reasonableness of an appointed counsel's fees. These factors included,

> the amount and character of the services rendered, the labor, the time, and trouble involved, the charac-

ter and importance of the litigation, the amount of money or value of the property affected, the professional skill and experience called for, and the standing of the attorney in his profession.

*Id.* at 607, 225 N.W.2d at 441 (quoting *Touchett v. E Z Paintr Corp.,* 14 Wis. 2d 479, 488, 111 N.W.2d 419, 423 (1961)); *see also* SCR 20:1.5 (setting forth factors to consider in determining the reasonableness of attorney fees). While *Sidney* does not control here, its analysis is relevant to our inquiry. We will look to the *Sidney* factors in reviewing the Board's decision.

At the hearing before the Board, Marcus Johnson explained why the State Public Defender reduced the number of out-of-court hours. According to Johnson, Gibson's out-of-court hours were excessive given that Anchico was charged with a single count of second-degree sexual assault,[2] that the trial lasted three days, and that Gibson had twenty-seven years of experience practicing law in Wisconsin. Johnson concluded from his review of Gibson's bill that Gibson's out-of-court hours were excessive primarily in four areas: client consultation, trial preparation for the first trial date, trial preparation for the second trial date, and postconviction activity.

Based on his four years of experience reviewing bills submitted to the State Public Defender, Johnson stated that the number of hours spent in court could be used to judge the reasonableness of the out-of-court hours billed.[3] In a case like the *Anchico* case, the average ratio

---

[2]Johnson's assertion was incorrect. Anchico was convicted of two counts of second degree sexual assault under sec. 940.225(2)(a), Stats. *State v. Anchico,* No. 87–1414–CR unpublished slip op. (Wis. Ct. App. Aug. 25, 1988).

[3]In its brief, the State Public Defender argues that evidence of the reasonableness of its decision is found in Wis. Adm. Code,

of out-of-court to in-court hours ranges from 2-to-1 to 4-to-1. To illustrate the hours ratio, Johnson discussed two cases, the bills from which he had recently reviewed. In the first case, the defendant had been charged with first degree murder, possession of a weapon by a felon, armed robbery, and arson. There the hours ratio was 2-to-1. In the second case, the defendant was charged with arson, a class B Felony. There the hours ratio was 3-to-1. In contrast, Gibson's bill reflected a 10-to-1 hours ratio, and he was compensated based on a 6-to-1 hours ratio.[4]

sec. SPD 3.02 (1984), which lists estimated costs of retaining private counsel to determine indigent status for public defender representation. The State Public Defender makes the same argument with respect to the standard established for budgetary determinations for public defenders under sec. 977.08(5), Stats., which indicates that a public defender should handle 184.5 felony cases per year. We will not consider this evidence because it is not a part of the record before the Board. Sec. 227.57(1), Stats. (review limited to record before the agency). Even were we to consider this evidence, we question its relevance. 184.5 three-day trials would take 553.5 days to try. Matters resolved short of trial bear little relationship to the *Anchico* case.

[4]The State Public Defender reduced specific out-of-court hours on Gibson's bill rather than simply reducing the total number of out-of-court hours. At the hearing, Johnson explained,

> we get a sense and then we start to figure out how we can reduce it and then at some point, if something is reduced from 4.8 to 2.8 it's just reduced because there's the big block of time as opposed as going through and say you billed 1.6 hours here so we'll take off 3 tenths here. We have to make those kind of reductions in order to be fair in reviewing the bill.

While we do not condone the State Public Defender's method of reducing the number of hours as applied in this case, the fact that it reduced specific hours does not render the bill reduction unreasonable.

815

In response, Gibson explained that the Anchico case was unusual due to the past sexual relationship between Anchico and the victim.[5] The unusualness of the sexual relationship between Anchico and the victim required that Gibson spend many hours researching the rape shield law, sec. 972.11, Stats., and preparing evidentiary motions. Gibson stated that the case was so unusual that the ratio Johnson spoke of was inapplicable. Other difficulties arose because Anchico did not speak English well and because he was a difficult person to work with.

The Board asked Gibson why he needed to spend over 400 additional hours on trial preparation after the case had been set for trial on March 24. Gibson explained that he did not believe the case would be tried on March 24 and that he was not prepared for trial on that date. He said he spent another sixty hours preparing for trial after the case was rescheduled a second time because he learned that the state had changed its theory of the case two days before trial. Gibson was asked why he spent so many hours in client consultation time and in preparation time before the sentencing hearing. Gibson explained that the hours were necessary because Anchico, who was not released on bail, was having a difficult time in jail and because a witness was giving damaging information to the probation officer who was preparing the presentence report.

---

[5] Anchico and [the victim] began dating in November, 1984. Their relationship ended in August, 1985, although they continued to see each other occasionally until December 20, 1985, the date on which the assault was alleged to have occurred. Throughout the relationship, Anchico and [the victim] routinely engaged in sexual activity, some of it physically "rough," as well as practices which might be considered unusual, if not aberrant, by many people.

*State v. Anchico*, No. 87–1414–CR, unpublished slip op. at 2 (Wis. Ct. App. Aug. 25, 1988).

Gibson submitted to the Board a four-page memo, in which he addressed the time reduction the State Public Defender made on his bill. For example, Gibson had billed 3.8 hours for a conference with the Assistant District Attorney and Anchico. The State Public Defender reduced Gibson's hours to 1.8. In the memo, Gibson explained,

> This client was a very articulate, verbal, intelligent and well-educated person, but English is not his first language. There are many, many instances in the course of events leading up to the trial which showed me that he didn't understand things that I and others had assumed he understood. It was time-consuming to interview and re-interview him, but I had to be sure that he understood me and I understood him.

■■ Based on the record before the Board, we conclude that its decision to reduce the number of out-of-court hours Gibson billed was reasonable and supported by substantial evidence. Johnson's statements before the Board indicate that Gibson's bill was thoroughly reviewed and that the bill was reduced based on considerations consistent with the *Sidney* factors. The fact that Gibson was compensated based on an hours ratio significantly greater than the average hours ratio for similar cases indicates that allowance was made for the unusualness of this case.

*By the Court.*—Judgment affirmed.

SUNDBY, J. *(dissenting).* The public defender acknowledges that this is a ch. 227, Stats., review of a decision of the State Public Defender Board. Yet, the public defender argues that under sec. 977.08(4), Stats., the Board has "complete discretion" to pay whatever the Board considers reasonable. The public defender takes

several positions which are inconsistent. First, the public defender claims that a dispute between the public defender and a retained attorney is "a matter of pure contract law." Second, the public defender argues that unless the Board's decision is found to be "wholly arbitrary and without rational basis," it must be affirmed as a legitimate exercise of the Board's administrative powers. Finally, the public defender argues that under secs. 227.57(2) and (6), Stats., the Board's decision should be affirmed if it is supported by substantial evidence in the record.

Section 977.08(4), Stats., provides that at the conclusion of each case, the appointed attorney shall submit his or her bill to the public defender, who shall review the bill and reject it or approve it in whole or in part. "Any attorney dissatisfied with the decision of the state public defender regarding the bill may have the decision reviewed by the board." Wisconsin Adm. Code, sec. SPD 4.03(3) provides that the hearing before the Board "shall be considered a 'class 3' proceeding and is governed by ss. 227.07 to 227.09, Stats." These statutes were renumbered secs. 227.44, 227.45 and 227.46 by secs. 32, 33, 33g, 1985 Wis. Act 182. These sections provide for an evidentiary hearing, at which witnesses are sworn and are subject to cross-examination. Gibson does not complain that he was denied the hearing contemplated by secs. 227.44, 227.45 and 227.46. He does, however, complain that the Board did not explain the basis for its decision.

Wisconsin Adm. Code, sec. SPD 4.03(5) provides: "The board's written decision shall constitute findings of fact and conclusions of law within the meaning of s. 227.10, [Stats.]." Section 227.10 was renumbered sec. 227.47 by sec. 33r, 1985 Wis. Act 182. Section 227.47 provides in part: "Every proposed or final decision of an agency . . . following a hearing and every final decision

of an agency shall be in writing accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each material issue of fact without recital of evidence . . .."

Gibson complains that the Board did not explain the basis for its decision.

The Board concluded:

> (7) That the original attorney billing is unreasonable since:
> (a) Out-of-court hours are excessive;
> (b) Amount and character of services rendered are excessive;
> (c) Billing exceeds customary charges for case of this nature.

The Board did not explain why the attorney's out-of-court hours are excessive, why the amount and character of services rendered are excessive, or what are customary charges for a case of this nature.

The Board's decision is similar to the decision of the Public Service Commission which was found wanting in *Madison Gas & Elec. Co. v. Public Serv. Comm.,* 109 Wis. 2d 127, 137, 325 N.W.2d 339, 344 (1982). The Public Service Commission had determined that it was "just and reasonable" to adjust for MG&E's cost of excess generating capacity. The court found that this did not meet the test by which the exercise of discretion is measured. "Discretion is more than a choice between alternatives without giving the rationale or reason behind the choice." *Id.* at 136–37, 325 N.W.2d at 344 (quoting *Reidinger v. Optometry Examining Bd.,* 81 Wis. 2d 292, 297, 260 N.W.2d 270, 273 (1977)).

The requirement that an administrative agency state the reasons for its decision is more than statutory;

it embodies the essential requirement of due process. *Edmonds v. Board of Fire & Police Commrs.,* 66 Wis. 2d 337, 347–49, 224 N.W.2d 575, 580–81 (1975).

I would reverse the judgment and direct the trial court to remand the matter to the Board to allow it to explain the basis for its decision. I therefore respectfully dissent.