Lee R. Krahenbuhl, DDS,
Plaintiff-Appellant,

v.

Wisconsin Dentistry Examining Board,
Defendant-Respondent.

Court of Appeals

*No. 2005AP1376. Submitted on briefs January 19, 2006.
—Decided March 22, 2006.*

2006 WI App 73

(Also reported in 713 N.W.2d 152.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Raymond M. Roder* of *Reinhart Boerner Van Deuren S.C.*, Madison, *Charles J. Hertel* of *Dempsey, Williamson, Lampe, Young, Kelly & Hertel LLP*, Oshkosh, and *Frank R. Recker* of *Frank R. Recker & Assocs. Co., L.P.A.*, Marco Island, Florida.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Robert M. Hunter*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Lee R. Krahenbuhl, DDS, appeals from a circuit court order upholding the Wisconsin Dentistry Examining Board's (DEB) decision revoking his license to practice dentistry. Krahenbuhl argues that the DEB denied him due process because it failed to use the five-pronged test identified in *Gilbert v. Medical Examining Board*, 119 Wis. 2d 168, 349 N.W.2d 68 (1984), and clarified in *Gimenez v. Medical Examining Board*, 203 Wis. 2d 349, 552 N.W.2d 863 (Ct. App. 1996), to determine whether he engaged in unprofessional conduct when he diagnosed a patient with thirteen cavities that needed immediate treatment. He argues that pursuant to those cases, the DEB needed to determine, and articulate in the record, that the methods he used to diagnose the cavities were below the minimally acceptable standard of care. Krahenbuhl

158

misses the point. The DEB disciplined Krahenbuhl for unprofessional conduct not because his techniques were below the standard of care, but because he perpetrated a fraud on a patient by attempting to obtain compensation for an unnecessary procedure. We hold that the five-pronged test of *Gilbert* and *Gimenez* does not apply to professional discipline cases such as this one that are not based on allegations involving a course of treatment that is dangerous or detrimental to the patient or the public. We also reject Krahenbuhl's other challenges to the DEB decision. We affirm.

*Facts*

¶ 2. The State granted Krahenbuhl a license to practice dentistry in Wisconsin in 1982. On April 23, 2001, Kenneth Rodgers presented to Krahenbuhl for an initial dental examination, necessary dental x-rays and a consultation. During the course of the visit, Krahenbuhl took x-rays of Rodgers' teeth, cleaned his teeth and conducted a traditional examination of his teeth using a mirror and explorer.

¶ 3. Krahenbuhl also used the techniques of "microdentistry." According to Krahenbuhl, microdentistry is "the art and science of detecting and treating decay in its earliest stages, thereby resulting in the removal of as little tooth structure as possible, and subsequently placing the smallest possible restorations (fillings) while assuring that those restorations are aesthetically pleasing and long lasting." As part of this microdentistry methodology, Krahenbuhl applied caries detection dye (CDD) on Rodgers' teeth and used visual magnification to detect any absorption of the CDD. Through this process, Krahenbuhl concluded that Rodgers had thirteen carious lesions or cavities needing treatment.

159

¶ 4. Krahenbuhl delegated the consultation that occurred later in the day on April 23 to Janet Krahenbuhl, his spouse, office manager and dental hygienist. According to Rodgers, Janet Krahenbuhl informed him that he had thirteen cavities requiring "immediate" treatment, at an estimated cost of $1500.

¶ 5. Rodgers left the consultation surprised that he had a dental problem requiring immediate attention. He contacted an attorney and was told to seek a second opinion.

¶ 6. In July, Rodgers went to his former dentist, David Ehlert, DDS, for a second opinion. Rodgers did not inform Ehlert of the purpose behind his visit. Ehlert did not use CDD in his examination of Rodgers. He instead used more traditional tools like a mirror and explorer. Following his examination, Ehlert concluded that Krahenbuhl had no active caries that warranted intervention.

¶ 7. In August, Rodgers sought a third opinion from James J. McGrane, DDS. Rodgers did not inform McGrane of the purpose behind his visit. Like Ehlert, McGrane also did not use CDD in his examination of Rodgers. McGrane used a mirror, explorer and radiographs. After conducting his examination of Rodgers, McGrane concluded that he did not have any active dental caries.

¶ 8. In mid-August, Rodgers filed a complaint with the Department of Regulation and Licensing, Division of Enforcement, alleging that Krahenbuhl had been "dishonest and not truthful" in telling him that he had numerous cavities requiring urgent treatment. The Division filed a complaint initiating disciplinary proceedings against Krahenbuhl in August 2002. The complaint alleged that Krahenbuhl's representations to Rodgers that he had "multiple cavities requiring urgent

treatment were false." The complaint stated that Krahenbuhl's conduct "in making false representations to Mr. Rodgers of treatment immediately necessary constitutes unprofessional conduct contrary to [WIS. STAT. § 447.07(3)(a) and (i) (2003–04)[1]]." The complaint also noted previous disciplinary proceedings that involved Krahenbuhl making false representations.

¶ 9. At the Division's request, Rodgers submitted to an examination by Christopher Laws, DDS. Laws did not use CDD in his examination of Rodgers. Laws' relied upon radiographs previously taken and a mirror and an explorer to conduct his examination. Laws' examination disclosed that Rodgers did not have any cavities requiring urgent or immediate treatment.

¶ 10. A three-day administrative hearing was held in April and May 2003. The administrative law judge (ALJ) heard the testimony of Krahenbuhl and his wife, Rodgers, Ehlert, Laws and Tim Rainey, DDS.

¶ 11. In his testimony, Rodgers recounted the series of events leading to his filing of a complaint, stressing that Janet Krahenbuhl informed him that the multiple cavities her husband detected "needed to be taken care of immediately." Laws testified that he had only used CDD a "couple of times," but that he felt it gave "false positives" and was "[s]omewhat of a fluff technology."

¶ 12. Janet Krahenbuhl, who had conducted at least 5000 consultations, testified specifically about her consultation with Rodgers. She stated that she did not tell Rodgers that his cavities required urgent or immediate treatment. Krahenbuhl testified to the benefits of microdentistry and the use of CDD. Rainey testified at

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

161

Krahenbuhl's request and is an expert in the field of microdentistry. He testified that CDD and microdentistry techniques are widely accepted throughout the dental profession. Rainey, who is not licensed in Wisconsin, testified that he had not personally examined Rodgers because the DEB refused to allow him to do so.

¶ 13. At the conclusion of the hearing, the ALJ issued a proposed decision recommending dismissal of the complaint against Krahenbuhl. The ALJ concluded that the testimony of all of the witnesses to be credible, but ultimately chose to place more weight on the testimony of the Krahenbuhls and to hold the use of CDD and visual magnification as the standard of care in the dental profession. The Division filed objections to the proposed decision.

¶ 14. Upon review and consultation with the ALJ, the DEB ordered that Krahenbuhl's license to practice dentistry in Wisconsin be revoked. The DEB concluded that Krahenbuhl had engaged in unprofessional conduct contrary to Wis. Stat. § 447.07(3)(a) and (i) when he falsely informed Rodgers that he had thirteen cavities that required treatment. The DEB based its conclusion on its findings that "Mr. Rodgers had no caries requiring restoration at the time of his examination by Dr. Krahenbuhl" and that "Dr. Krahenbuhl's representations that Mr. Rodgers had multiple cavities requiring treatment were false."

¶ 15. The DEB rejected as incredible Rainey's testimony and accepted as credible Laws' testimony. The DEB recognized that as a half-owner of the commercial arm of an organization that sells equipment and dental supplies for a CDD system, Rainey had "a notable economic interest in the outcome of this matter." The DEB determined that the use of a mirror, explorer and radiographs was the accepted standard of

162

care for detecting cavities in April 2001. The DEB also adopted Rodgers' testimony that Janet Krahenbuhl told him that his thirteen cavities required "immediate" treatment and rejected Janet Krahenbuhl's testimony that she did not inform him that "immediate" treatment was necessary. The DEB commented that Janet Krahenbuhl had a financial stake in convincing Rodgers of the immediacy of his treatment needs and that, given the sheer volume of her prior consultations and the passage of time, it was "exceedingly difficult to believe that [Janet Krahenbuhl] could actually recall any specifics of having met with Mr. Rodgers on April 21, 2001."

¶ 16. Krahenbuhl filed a petition for judicial review with the circuit court. The circuit court affirmed the DEB's order. This appeal follows.

## Standard of Review

¶ 17. When reviewing administrative decisions, we must look at the agency's conclusions of fact as well as its conclusions of law. The reviewing court uses different standards when evaluating an agency's conclusions of fact versus conclusions of law.

¶ 18. The substantial evidence standard is used when the issues presented concern questions of fact. *See Hamilton v. DILHR*, 94 Wis. 2d 611, 617, 288 N.W.2d 857 (1980). Pursuant to Wis. Stat. § 227.57(6), agency findings of fact will be affirmed if they are supported by substantial evidence. *See Hamilton*, 94 Wis. 2d at 617. An agency conclusion of fact will not be set aside unless it is found that such a conclusion could not have been reached by a reasonable person acting reasonably. *See Bucyrus-Erie Co. v. DILHR*, 90 Wis. 2d 408, 418, 280 N.W.2d 142 (1979). Generally, this court

cannot evaluate credibility or weight of the evidence of any finding of fact. *See id.* Instead the reviewing court must examine the record for substantial evidence that supports the agency's conclusions. See *Currie v. DILHR*, 210 Wis. 2d 380, 387, 565 N.W.2d 253, (Ct. App. 1997).

¶ 19. There are three standards of review that a reviewing court may use when examining the agency's conclusions of law: de novo, due weight and great weight. In this case, the parties disagree as to what level of deference should be applied to the DEB's conclusions of law. Krahenbuhl argues that the de novo standard is appropriate, while the DEB argues otherwise. Because we conclude that the DEB's conclusions are correct under any level of deference, we need not further address the standard of review.

## Analysis

¶ 20. Krahenbuhl challenges the DEB's decision on several fronts, most of which are couched in terms of due process violations. We walk through each of the arguments in turn.

## Gilbert and Gimenez

¶ 21. Krahenbuhl argues that the DEB denied him due process when it failed to measure his conduct against the five-pronged test identified in *Gilbert* and clarified in *Gimenez*. In *Gilbert,* our supreme court reviewed the legal standards used to define whether a physician engaged in "unprofessional conduct" because his or her choice of treatment constituted a danger to

the health, welfare or safety of the patient or public in violation of Wis. Stat. §§ 448.02(3) and 448.18(1)(g) and Wis. Admin. Code § MED 10.02(2)(h).[2] *See Gilbert,* 119 Wis. 2d at 178, 205. Subsequently, in *Gimenez,* we teased out from the *Gilbert* decision a five-factor test to guide the medical examining board in its determination of whether a physician improperly treated a patient. In reviewing the *Gilbert* court's analysis we wrote:

> [W]e conclude that a reasonable reading of *Gilbert* is that the supreme court set out a five-pronged test to guide the Board in its determination of whether a physician improperly treated a patient. Again, these five elements are:
>
> (1) what course of treatment the physician provided;
>
> (2) what the minimum standards of treatment required;
>
> (3) how the physician's treatment deviated from the standards;
>
> (4) how the treatment created an unacceptable level of risk; and
>
> (5) what course of treatment a minimally competent physician would have taken.

*Gimenez,* 203 Wis. 2d at 355. We held that "with every charge of endangering a patient's health," the medical examining board must discuss these five factors and the evidence relating to each factor seriatim in a written decision. *Id.* at 351, 359.

---

[2] The language of the statute and rule has been changed, but we have applied the *Gilbert v. Medical Examining Board,* 119 Wis. 2d 168, 349 N.W.2d 68 (1984), analysis to subsequent versions of the statute and rule. *See Gimenez v. Medical Examining Bd.,* 203 Wis. 2d 349, 354 n.3, 552 N.W.2d 863 (Ct. App. 1996).

¶ 22. Krahenbuhl attempts to bring his case within the directive established in the two cases by framing the allegations of professional misconduct against him in terms of incompetence and "claimed endangerment to the patient." Krahenbuhl misunderstands the nature of the charges against him.

¶ 23. The initial complaint filed against Krahenbuhl does not allege that he engaged in unprofessional conduct by advocating a course of medical treatment that posed a threat to the health, safety or welfare of the patient or the public. Rather, the complaint alleges that Krahenbuhl engaged in unprofessional conduct by perpetrating a fraud on a patient in an attempt to obtain compensation.

¶ 24. The initial complaint alleges that "[t]hrough a consultation with Janet Krahenbuhl . . . [Krahenbuhl] informed Mr. Rodgers that he had thirteen cavities requiring immediate treatment, at an estimated cost of $1,500.00." The complaint further alleges that Krahenbuhl's representations to Rodgers that he had "multiple cavities requiring urgent treatment were false." The complaint contends that other dental examinations of Rodgers disclosed that he "had no active caries, that his existing restorations continued to be serviceable, and that there was no need for the dental treatment recommended to him by [Krahenbuhl]." The complaint then charges Krahenbuhl with unprofessional conduct in violation of Wis. Stat. § 447.07(3)(a) and (i). Section 447.07(3)(a) permits the DEB to discipline a dentist who "[e]ngaged in unprofessional conduct" and § 447.07(3)(i) allows the DEB to discipline a dentist who "[o]btained or attempted to obtain compensation by *fraud or deceit." Id.* (emphasis added). Thus, the charge of unprofessional conduct, as it is set forth in

166

the complaint, concerns Krahenbuhl's attempt to obtain compensation from Rodgers by a false diagnosis.

¶ 25. The five-pronged test of *Gilbert* and *Gimenez* does not apply to cases such as this where fraud and misrepresentation are alleged. First, *Gimenez*, which involved an entirely different statute than the one at issue here, expressly limits the application of the test to cases where the medical professional is charged with choosing a course of treatment that is dangerous or detrimental to his or her patient or the public. *See Gimenez*, 203 Wis. 2d at 351, 354 (stating that "with every charge of endangering a patient's health" there are five elements that must be discussed).

¶ 26. Second, the five factors of the test only make sense when the allegations against the medical professional concern his or her advocating a course of treatment that poses a danger to the health, safety or welfare of the patient or the public. The questions are structured so as to discern the competency of the medical professional. They seek to discover the minimum standards of treatment required and how the medical professional's treatment deviated from those standards, thereby creating an unacceptable level of risk to the patient or public. When dealing with allegations of fraud, on the other hand, the acceptable standard of care and whether the medical professional adhered to that standard are not relevant. In other words, the issue is not the medical professional's competency, but rather his or her honesty and ability to abide by the ethical standards of the profession.

¶ 27. Because the charges against Krahenbuhl sounded in fraud and misrepresentation, the dictates of *Gilbert* and *Gimenez* do not apply. We reject Krahenbuhl's due process challenge on those grounds.

167

### Standard of Care

¶ 28. Krahenbuhl questions, on due process grounds, the DEB's determination that the use of a mirror, explorer and radiograph was the accepted standard of care for cavity detection in April 2001. He maintains that the DEB improperly inferred a standard of care that was not articulated in or supported by evidence in the record. Again, Krahenbuhl misses the point.

█

¶ 29. The complaint alleges that Krahenbuhl falsely represented to Rodgers that he had thirteen cavities that required immediate treatment in violation of Wis. Stat. § 447.07(3)(a) and (i). The DEB made it clear in its decision that its finding of unprofessional conduct rested on Krahenbuhl's falsely informing Rodgers that he had thirteen cavities requiring immediate treatment when three other dentists agreed that he did not have any. As explained, the method by which Krahenbuhl made the diagnosis was not controlling on that question. Krahenbuhl's second due process challenge fails.

### Adequate notice

¶ 30. Krahenbuhl contends that he did not receive adequate notice of the charges against him because the complaint did not allege that the CDD methodology was not the appropriate standard of care. Krahenbuhl correctly observes that in meting out his discipline, the DEB referenced Wis. Admin. Code § DE 5.02(5). That section includes within the definition of "unprofessional conduct": "Practicing in a manner which substantially departs from the standard of care

ordinarily exercised by a dentist or dental hygienist which harms or could have harmed a patient." *Id.*

¶ 31. However, as we have already explained, whether Krahenbuhl's use of CDD techniques met the acceptable standard of care for cavity detection and treatment in 2001 is not relevant. It was not Krahenbuhl's practicing below the acceptable standard of care or in a manner that posed a risk to a patient or the public that formed the basis for the charges against him or the discipline he received. The basis for the charges against Krahenbuhl was that he violated WIS. STAT. § 447.07(3)(a) and (i) by attempting to obtain compensation through a false diagnosis and the complaint so notified Krahenbuhl. We reject Krahenbuhl's third due process challenge.

*Sufficiency of the evidence*

¶ 32. Krahenbuhl also seems to challenge, although it is cast as a due process challenge, the sufficiency of the evidence to support the DEB's factual findings and conclusions of law. Specifically, Krahenbuhl claims that there was no evidence to support the DEB's determination that Krahenbuhl had perpetrated a fraud on Rodgers by giving him a "false diagnosis." He points out that the three dentists who examined Rodgers did not necessarily aver that Rodgers had no cavities.

¶ 33. Again, Krahenbuhl misses the point. The DEB disciplined Krahenbuhl for falsely representing to Rodgers that he had multiple cavities *requiring immediate treatment* in violation of WIS. STAT. § 447.07(3)(a) and (i).

■

¶ 34. The substantial evidence in the record supports the DEB's determination. Rodgers testified that

169

at his consultation, Janet Krahenbuhl specifically informed him that he had "13 or 14 cavities . . . and that they needed to be taken care of, this is something that needed to be taken care of immediately." When pressed on whether Janet Krahenbuhl had told him that the cavities "needed to be taken care of immediately," Rodgers replied, "Yeah, that was the word." The three other dentists who examined Rodgers came to a different conclusion. At the hearing, Ehlert and Laws both testified that Rodgers had no active cavities warranting immediate treatment. Because the record contains substantial evidence supporting the DEB's findings, we reject Krahenbuhl's sufficiency of the evidence argument.

*Credibility determinations*

¶ 35. Krahenbuhl makes some convoluted arguments concerning the DEB's determinations about the credibility of witnesses. He claims that the DEB improperly shifted the burden of proof to him by rejecting "unrebutted evidence" as speculation and by making assumptions about credibility that are without support in the record. Krahenbuhl largely refers to the testimony of his wife that she did not use the word "urgent" or "immediate" in describing the treatment options to Rodgers. However, contrary to Krahenbuhl's assertions, Rodgers specifically testified that Janet Krahenbuhl did tell him that the cavities required "immediate" treatment. The DEB, acting as fact finder, was well within its rights to adopt Rodgers' testimony as more credible than Janet Krahenbuhl's testimony. *See Stein v. State Psychology Examining Bd.*, 2003 WI App 147, ¶ 33, 265 Wis. 2d 781, 668 N.W.2d 112 (noting that the credibility of witnesses and the weight given to their testimony are

within the exclusive province of the agency, as is the determination of what inference to draw when the evidence allows more than one reasonable inference). As the DEB pointed out, Janet Krahenbuhl had conducted more than 5000 consultations and had an obvious financial stake in the outcome of the case. As a reviewing court, we will not independently weigh the evidence or pass on the DEB's assessment of the credibility of the witnesses. *See Spacesaver Corp. v. DOR*, 140 Wis. 2d 498, 504, 410 N.W.2d 646 (Ct. App. 1987).

¶ 36. Furthermore, although the DEB departed from the credibility determinations of the ALJ, the DEB comported with the requirements of due process in doing so. The DEB appropriately consulted with the ALJ about her conclusions regarding the credibility of the witnesses and detailed its reasons for departing from the ALJ's credibility determinations. *See Pieper Elec., Inc. v. LIRC*, 118 Wis. 2d 92, 97–98, 346 N.W.2d 464 (Ct. App. 1984) (holding that when the administrative agency overturns its ALJ's credibility determinations due process requires that the agency (1) glean, from the record or from personal consultation with the hearing examiner, the hearing examiner's personal impressions of the material witness(es) and (2) include in a memorandum opinion an explanation for its disagreement with the hearing examiner). We will not now tinker with these conclusions. *See Spacesaver Corp.*, 140 Wis. 2d at 504.

*Expert examination*

¶ 37. Krahenbuhl also argues that the DEB violated his right to due process when it refused to permit Rainey to examine Rodgers using the CDD methodol-

171

ogy. Krahenbuhl claims that because Rainey was not allowed to examine Rodgers, he was denied the opportunity to fully confront his accuser, Rodgers. While Krahenbuhl couches his argument in constitutional terms, he is really challenging a discretionary evidentiary determination by the DEB. *Cf. Ranft v. Lyons*, 163 Wis. 2d 282, 293–94, 471 N.W.2d 254 (Ct. App. 1991); WIS. STAT. §§ 227.45(1) and 227.57(8). We see no reason to disturb this discretionary determination. As the DEB noted, Rainey is not licensed to practice dentistry in Wisconsin, and he has an economic interest in the outcome of this case.

### Conclusion

¶ 38. The complaint charged Krahenbuhl with falsely diagnosing a patient in an attempt to obtain compensation in violation of WIS. STAT. § 447.07(3)(a) and (i). Because the complaint does not charge Krahenbuhl with choosing a course of treatment that endangered a patient or the public, the five-factor test of *Gilbert* and *Gimenez* do not apply. Finding no error, we affirm the order of the circuit court upholding the DEB's decision to revoke Krahenbuhl's license to practice dentistry in Wisconsin.

*By the Court.*—Order affirmed.